TAYLOR v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant*.

1. **Negligence**: RAILROADS: KILLING STOCK. In a common law action against a railroad for negligently running over and killing

plaintiff's cattle on a highway crossing, the evidence tended to show that the cattle were killed by defendant's train at the crossing, that the servants of defendant having the management of the train failed to ring the bell or to blow the whistle as it approached the crossing, that the cattle had freely approached the crossing a short time before the train arrived, and that there was nothing in their condition or situation to prevent them from escaping the train, if the required signals had been given. *Held* that these facts made out a *prima facie* case for plaintiff and a demurrer to the evidence by defendant was properly overruled.

2. **Railroads:** RATE OF SPEED : JURY. Whether or not the rate of speed at which a train is run is so excessive and reckless as to constitute negligence is a question for the jury.

2. **Evidence** : RES GESTAE. Evidence as to the rate of speed of the train in cases like this one is pertinent to the issue. It is usually admitted as part of the *res gestae*, its effect being controlled by proper instructions.

*Appeal from St. Francois Circuit Court.*—HON. J. H. NICHOLSON, Judge.

AFFIRMED.

*Thos. J. Portis* for appellant.

The defendant's demurrer to the evidence should have been sustained. The facts of this case bring it within the rule announced in *Braxton v. R. R.*, 77 Mo. 455.

No brief for respondent.

MARTIN, C.—This is a common law action against the defendant for negligently running over and killing a cow and a heifer belonging to plaintiff on the 13th of October, 1879, at a highway crossing. It was commenced before a justice of a peace, thence taken by appeal to the circuit court in which a verdict and judgment in favor of plaintiff were rendered in the sum of $30, from which the defendant appeals. At the close of the plaintiff's case the court overruled a demurrer to the evidence. The defendant submitted no evidence. The only question presented to us for determination in the

abstract and brief of defendant is, whether the evidence was sufficient to justify the court in permitting the issues to go to the jury. To dispose of this question it will be necessary to rehearse the evidence bearing upon the liability of defendant.

William R. Cloud testified: "Know the plaintiff who lived on October 13, 1878, right where the railroad crosses Caledonia road; know the cattle described in the complaint; they were her's; they were knocked off the railroad on October 13, 1878; one was killed and the other died from the injuries; this was at night; I was awake at the time—between one and two o'clock; was giving medicine to my daughter and bound to be awake at that time; it was a passenger train that killed them; saw the cattle the morning before; next morning saw one of them on the left side of the road and the other on the right—not far off from the Caledonia road; the fence where the cattle-guard was broken was on the right side of the track; from every appearance, they were standing or lying close to the cattle-guard when they were struck; have lived near the road for twelve months; that night the train was faster than I ever heard before; it went like a dart; I never saw it."

The defendant objected to the evidence concerning the speed of train because excessively fast running is not averred in the petition and no rate of speed, however great, constitutes negligence, which objections were overruled, and it excepted.

The plaintiff then asked: "Was a bell rung or whistle blown before approaching the crossing?" To which the defendant objected because this was not alleged as a ground of action and was immaterial, etc., which objections the court overruled, and the defendant excepted. The witness answered: "Could have heard the bell if it had been rung or heard the whistle if had blown; don't expect the train passed there at night while I lived there but what I heard it; this night I heard no bell or whistle. The cow was worth $20 and the

heifer $10; I don't know the usual rate of trains; I have an idea of the speed of the night express; it was running faster that night than I ever heard it; the cow was knocked off between thirty and fifty feet from the ·cattle-guard. There were two or three places where she struck the ties leaving hair on them. She was left some five or six feet from the track when thrown off the track. The other was knocked about one-half as far as the cow. She didn't stop on the way. It was a light night. Heard the cattle come up about one o'clock in the night. This occurred about two o'clock. I heard the train at Lough-boro. When the train came to the bridge it seemed to be coming very fast, and when it crossed the bridge I knew it was faster than usual. This was a public road leading from Farmington to Caledonia."

*Cross-examined:* "My house was on the side of the railroad on this side between 30 and 60 feet from the railroad; don't live there now; had been living there about 12 months. Heard the cars pass nearly every night; always heard them when they rung the bell or whistled. Train always woke me up. Had been up at 12 o'clock. I did not then lie down for the purpose of sleeping. I thought at the time they were going faster than usual. It was on time. Don't think they ever passed me without waking me. Could sometimes hear trains at a greater distance; a train running does not make more noise than its bell. I have heard the cars running on the road when I was in town and could not hear the bell at such time. When the bell did ring I heard it. I didn't know the cattle were on the track, was not listening particularly for the bell that night. There was sign on the fence made by the cattle knocked against it. They were knocked through the cattle-guard."

Benjamin Brown, a laborer on the road, testified that he saw the carcasses before they were hauled off by the section boss: "When I saw them one was lying on the left and the other on the right of the railroad. About

one-half panel of fence was knocked down where heifer was found. The cow was lying about 50 feet from the crossing, and the other about 25 feet." This with some evidence relating to the value of the animals killed constituted all that was submitted in the case.

I do not think the court erred in allowing the case to go to the jury on this evidence. It tended to prove that the cattle were killed by the defendant's train at the crossing. It, also, tended to prove that the servants of defendant, managing the train, failed to ring the bell or blow the whistle, as it approached the crossing. It also appears from the evidence that the cattle had freely approached the crossing a short time before the train arrived. And as the night was light, there was evidently nothing in the condition or situation of the cattle to prevent them from escaping the train if the required signals had been given. These facts make a *prima facie* case, under the decisions of this court, and it was incumbent on the defendant to rebut it by competent evidence, if possible. Such evidence is presumably within the control of defendant if it has any existence at all. *Turner v. R. R.,* 78 Mo. 578; *Kendig v. R. R.,* 79 Mo. 207.

The objection to the evidence relating to the rate of speed has not been considered in the briefs of counsel, the defendant contending only that an unusual rate of speed is not negligence *per se*. While it may be true that an unusual rate of speed is not negligence *per se*, it has never been held by this court that a train may not be run at such an excessive and reckless rate of speed as to constitute negligence. Whether the rate of speed at which a train is run, at any particular time, is of this character, is a question for the jury, from the evidence bearing upon the rate at which it was actually run. The evidence in this case was pertinent to the issue, and was properly admitted. It has usually been admitted in this class of cases as a part of the *res gestae*, its effect being controlled by proper instructions. *Maher v. R. R.,* 64 Mo. 267; *Bell v. R. R.,* 72 Mo. 50; *Wallace v. R. R.,* 74 Mo. 594; *Powell v. R. R.,* 76 Mo. 80.

There being no error in the exceptions argued by counsel, the judgment is affirmed. All concur. Hough, C. J., absent.